UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**RUMI RAHMAN,**
individually and on behalf of all
others similarly situated,        **CLASS ACTION**

      Plaintiff,        **JURY TRIAL DEMANDED**

v.

**AUTO TRANSPORT GROUPE, INC D/B/A
AMERICAN AUTO TRANSPORT,**

      Defendant.
_____/

## CLASS ACTION COMPLAINT

Plaintiff Rumi Rahman brings this class action against Defendant Auto Transport Groupe, Inc. d/b/a American Auto Transport ("Defendant") and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.    This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., ("TCPA"), arising from Defendant's knowing and willful violations of the TCPA.

2.    Defendant operates as a vehicle transportation broker, offering both "open and enclosed auto transports".[1]

3.    Defendant "has over "15 years of experience" in the automotive transport business with "over 1,000,000 vehicles moved".[2]

4.    Defendant engages in unsolicited telemarketing directed towards prospective customers

---

[1] autotransportaat.com/about-us/
[2] http://autotransportaat.com/about-us/

1

with no regard for consumers' privacy rights.

5. Defendant's telemarketing consists of sending text messages to consumers soliciting them to purchase its goods and/or services.

6. Defendant caused thousands of unsolicited text messages to be sent to the cellular telephones of Plaintiff and Class Members, causing them injuries, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

7. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct. Plaintiff also seeks statutory damages on behalf of himself and Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## JURISDICTION AND VENUE

8. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state than Defendant. Plaintiff seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

9. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within this district and, on information and belief, Defendant has sent the same text message complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts have occurred within this

district, subjecting Defendant to jurisdiction here.

## PARTIES

10. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Broward County, Florida.

11. Defendant is a Florida corporation with its principal address at 4839 SW 148th Ave. Suite 425, Weston, FL 33330. Defendant directs, markets, and provides business activities throughout the State of Florida.

## THE TCPA

12. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

13. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

14. The TCPA exists to prevent communications like the ones described within this Complaint. See Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 744 (2012).

15. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." Breslow v. Wells Fargo Bank, N.A., 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

16. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA

are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

17. A defendant must demonstrate that it obtained the plaintiff's prior express consent. See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

18. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. See Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

## FACTS

19. On or about August 21, 2019; August 22, 2019; August 23, 2019; August 24, 2019; August 26, 2019; August 27, 2019; August 28, 2019; August 29, 2019; and September 3, 2019, Defendant caused the following automated text messages to be transmitted to Plaintiff's cellular telephone number ending in 1915 ("1915 Number"):

474-747 >

Wed, Aug 21, 2:04 PM

It's Brian owner at American Auto Transport, Wanted to follow up with you about shipping your car anything I can do to help you make a decision? Willing to work with you our trucks run your route weekly! PLEASE call or text me directly on my cell 954-278-3867

Thu, Aug 22, 11:32 AM

I have a driver in your area, Do you still need car shipping I can work with

474-747 >

Thu, Aug 22, 11:32 AM

I have a driver in your area, Do you still need car shipping I can work with you on price looking to load all week please call/text me asap at 678-224-8818

Thu, Aug 22, 6:20 PM

American Auto Transport, Wanted to follow up with you about shipping your car anything I can do to help you make a decision? Willing to work with you our trucks run your route

474-747 >

American Auto Transport, Wanted to follow up with you about shipping your car anything I can do to help you make a decision? Willing to work with you our trucks run your route weekly! PLEASE call or text me directly on my cell 954-278-3867

Fri, Aug 23, 5:31 PM

S P E C I A L on Carshipping TODAY ONLY call and reserve your spot by 8pm est Trucks need to be filled up call or text me

474-747 >

Fri, Aug 23, 5:31 PM

S P E C I A L on Carshipping TODAY ONLY call and reserve your spot by 8pm est Trucks need to be filled up call or text me 954-278-3875

Sat, Aug 24, 12:40 PM

Still looking to ship your car? End of SUMMER SPECIAL on auto transport, Call me now 954-278-3311 call or text me directly 954-278-3311

5

474-747 >

Mon, Aug 26, 10:16 AM

It's Brian owner at American Auto Transport, Wanted to follow up with you about shipping your car anything I can do to help you make a decision? Willing to work with you our trucks run your route weekly! PLEASE call or text me directly on my cell 954-278-3867

Tue, Aug 27, 11:10 AM

Still looking to ship your car? End of SUMMER SPECIAL on auto



Wed, Aug 28, 6:14 PM

It's Brian owner at American Auto Transport, Wanted to follow up with you about shipping your car anything I can do to help you make a decision? Willing to work with you our trucks run your route weekly! PLEASE call or text me directly on my cell 954-278-3867

Thu, Aug 29, 11:36 AM

Hi, I just tried calling u but had no luck. I just want to see if you still need to ship

474-747 >

Tue, Aug 27, 11:10 AM

Still looking to ship your car? End of SUMMER SPECIAL on auto transport, Call me now 954-278-3863 call or text me directly 954-278-3863

Wed, Aug 28, 12:40 PM

Call me! I can help you transport your car, I run your route weekly and willing to work a deal with you call my cell asap 954-278-3311

474-747 >

Thu, Aug 29, 11:36 AM

Hi, I just tried calling u but had no luck. I just want to see if you still need to ship your car? please call or text me @ 954-278-3857

Mon, Sep 9, 12:32 PM

6



20. Defendant's text messages constitute telemarketing/advertising because they promote Defendant's business, goods and services.

21. For example, Defendant wrote Plaintiff about a "S P E C I A L on carshipping" and asks if there is anything Defendant "can do to help [Plaintiff] make a decision". Defendant further states that it is "[w]illing to work with [Plaintiff] on [Defendant's] trucks run [Plaintiff's] route weekly".

22. Defendant makes a profit on every car and/or truck that it helps transport.

23. Plaintiff received the subject text messages within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.

24. Upon information and belief, Defendant caused similar text messages to be sent to individuals residing within this judicial district.

25. At no point in time did Plaintiff provide Defendant with his express consent to be contacted by text messages using an ATDS.

26. Plaintiff is the sole user of the 1915 Number.

27. The numbers used by or on behalf of Defendant (484848, 474747) are known as a "short

code," a standard 5-digit code that enabled Defendant to send SMS text messages en masse.

28. The impersonal and generic nature of Defendant's text message, demonstrates that Defendant utilized an ATDS in transmitting the messages.

29. Further, on September 9, 2019, Plaintiff replied back "[s]top" to Defendant's text message and immediately received the following auto-reply from Defendant:

> Mon, Sep 9, 12:32 PM
>
> Stop
>
> You have discontinued from EZ Texting alerts. You will no longer receive messages from this service. Questions www.eztexting.com

This auto-reply was transmitted automatically without human intervention in response to Plaintiff's "stop" request. Defendant's use of auto-reply functionality further demonstrates that Defendant utilized an ATDS to text message Plaintiff.

30. The internet is replete with complaints of various other persons who also complain about Defendant's unwanted text messages:

[3]



[4]

---
[3] https://www.yelp.com/biz_photos/american-auto-transport-davie?select=kXNN8kbjL2S1_Ilsgmqang
[4] https://www.yelp.com/biz/american-auto-transport-davie?q=text%20message

9



31. To send the text message, Defendants used a messaging platform (the "Platform") that permitted Defendants to transmit thousands of automated text messages without any human

---

[5] https://www.whycall.me/954-278-3867.html
[6] https://800notes.com/Phone.aspx/1-954-278-3867
[7] https://800notes.com/Phone.aspx/1-954-278-3867
[8] https://www.callercenter.com/954-278-3875.html

10

involvement.

32. The Platform has the capacity to store telephone numbers.

33. The Platform has the capacity to generate sequential numbers.

34. The Platform has the capacity to dial numbers in sequential order.

35. The Platform has the capacity to dial numbers from a list of numbers.

36. The Platform has the capacity to dial numbers without human intervention.

37. The Platform has the capacity to schedule the time and date for future transmission of text messages.

38. To transmit the messages at issue, the Platform automatically executed the following steps:

   i. The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed;

   ii. The Platform then generated each number in the sequential order listed and combined each number with the content of Defendants' message to create "packets" consisting of one telephone number and the message content;

   iii. Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers.

   iv. Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendants. Each mobile carrier then sent the message to its customer's mobile telephone.

11

39. The above execution of Defendants' instructions occurred seamlessly, with no human intervention, and almost instantaneously. Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

40. The following graphic summarizes the above steps and demonstrates that the dialing of the text messages at issue was done by the Platform automatically and without any human intervention:



41. Defendant's unsolicited call caused Plaintiff actual harm in all the following ways:

   i. Defendant's text messages substantially aggravated Plaintiff. When Plaintiff gets a text message his phone rings and vibrates. Some of Defendant's messages were received by Plaintiff while he was at home with his family which caused his mobile phone to audibly ring and vibrate and therefore disturbed his domestic peace. Other messages were received by Plaintiff while he was working, these messages interrupted his work efforts.

   ii. Defendant's text messages wasted Plaintiff's time. Plaintiff wasted approximately 10 seconds reviewing each of Defendant's text messages to try and determine who was messaging him and why.

   iii. Plaintiff was so substantially aggravated by Defendant's messages that he spent approximately twenty minutes trying to research Defendant to try and figure out

who Defendant was and why Defendant sent Plaintiff text messages.

iv. During the time Plaintiff's phone vibrated and rang and while Plaintiff read Defendant's text messages, Plaintiff's phone was unavailable for other uses, including personal or work-related purposes.

v. Plaintiff also wasted time responding "STOP" to the message so that he would no longer receive messages from Defendant.

vi. After he replied "STOP," Plaintiff received another message confirming that he would no longer be contacted. Plaintiff spent additional time reviewing this reply.

vii. In all, Defendant's violations of the TCPA caused Plaintiff to waste at least twenty-one minutes of his time in addressing and attempting to stop Defendant's solicitation. This time was spent while Plaintiff was at his home or working and Plaintiff could have been pursuing other personal or job-related activities.

viii. Furthermore, Defendant's text message took up memory space on Plaintiff's cellular telephone, with each message taking up approximately 190 bytes. The cumulative effect of unsolicited text messages like Defendant's poses a real risk of ultimately rendering the phone unusable for text messaging purposes as a result of the phone's memory being taken up.

## **CLASS ALLEGATIONS**

### **PROPOSED CLASS**

36. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

37. Plaintiff brings this case on behalf of the below defined Class:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message using the same type of equipment used to text message Plaintiff, from Defendant or anyone on Defendant's behalf, promoting Defendant's property, goods or services to said person's cellular telephone number**

38. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

39. Upon information and belief, Defendant has placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

40. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

### COMMON QUESTIONS OF LAW AND FACT

41. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

> (1) Whether Defendant made non-emergency calls to Plaintiff and Class members' cellular telephones using an ATDS;
>
> (2) Whether Defendant can meet their burden of showing that they obtained prior

     express written consent to make such calls;

    (3) Whether Defendant's conduct was knowing and willful;

    (4) Whether Defendant is liable for damages, and the amount of such damages; and

    (5) Whether Defendant should be enjoined from such conduct in the future.

  42.  The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

  43.  Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

  44.  Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

  45.  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be

unduly burdened by individual litigation of such cases.

46. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

### COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the Class)

47. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

48. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

49. The TCPA defines an "automatic telephone dialing system" (hereinafter "ATDS") as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Id. at § 227(a)(1).

50. Defendant – or third parties directed by Defendant – used equipment having the capacity to store telephone numbers, using a random or sequential generator, and to dial such numbers and/or to dial numbers from a list automatically, without human intervention, to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class.

51. These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls

were made.

52. Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

53. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

**WHEREFORE**, Plaintiff Rumi Rahman, on behalf of himself and the other members of the Class, prays for the following relief:

a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b. A declaration that Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

c. An injunction prohibiting Defendant from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express consent of the called party;

d. An award of actual, statutory damages, and/or trebled statutory damages; and

e. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendants and the communication or transmittal of the text messages as alleged herein.

Date: October 9, 2019.

Respectfully submitted,

**EISENBAND LAW, P.A.**
*/s/ Michael Eisenband*
515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
Michael Eisenband
Florida Bar No. 94235
Email: MEisenband@Eisenbandlaw.com
Telephone: 954.533.4092

**HIRALDO P.A.**
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

*Counsel for Plaintiff and the Class*